UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA

IN RE:                                    )
                                          )
H. EDWARD PARIS, DDS, P.C.,               )    CHAPTER 11
                                          )    CASE NO. 21-40150
                    Debtor.               )

## THIRD AMENDED PLAN OF REORGANIZATION
## FOR SMALL BUSINESS UNDER CHAPTER 11

COMES NOW H. Edward Paris, DDS, P.C. (herein "Debtor"), through counsel, and makes this Third Amended Plan of Reorganization for Small Business Under Chapter 11 (herein "Third Amended Plan"), by which the Debtor amends the plan of reorganization, as previously amended on May 5, 2022, and says the following.

1.    *Debtor adopts and reiterates the May 5, 2022 Amendment to His Plan of Reorganization for Small Business Under Chapter 11 (herein "Second Amended Plan") in full to the extent not inconsistent herewith. This Third Amended Plan is being done without restating the entire plan in the interest of time expediency. This Third Amended Plan makes minor technical changes suggested by discovery and pleadings, but makes a significant change in the assertion of a budget or projection, which has been adjusted from a prior budget or projection based on testimony by the objecting creditor, Paragon Bank's (herein "objecting creditor") expert, which testimony was not obtained until October 3, 2022. There is no negative change in the treatment of the objecting creditor or any other creditor.*

2.    On page 1, Debtor amends its Chapter 11 plan in the unnumbered opening paragraph substituting the following:

> ### A. Description and History of the Debtor's Business
>
> *The Debtor is a Subchapter S corporation, which commenced operations on January 1, 1994.*

3.    On page 1, Debtor amends its Chapter 11 plan in the unnumbered (but lettered) opening paragraph substituting the following:

> *C. Ability to make future plan payments and operate without further reorganization*
>
> *Based on information just obtained from objecting creditor's financial expert, the Debtor substitutes, for Exhibit "B" on the plan, the attached Exhibit "B," which shows projected disposable income essentially the same as Exhibit "B" to the prior Second Amended Plan.*

4.      On page 1, Debtor further amends the unnumbered (but lettered) opening paragraph at **C. Ability to make future play payments and operate without further reorganization** to show that the final plan payment expected to be paid will be on *November 30, 2025*.

5.      On page 1, Debtor further amends the unnumbered, but lettered, opening paragraph at **C. Ability to make future plan payments and operate without further reorganization** to substitute new Exhibit "C."

6.      On page 2, Debtor further amends ¶3.02, in the second alternative, which is applicable because it has become clear that there will be on consensual plan, and says as follows:

> *Each holder of an administrative claim allowed under § 503 of the Code, to the extent allowed, will be paid in full, to the extent possible, out of funds on hand with the Debtor on date of confirmation and funds on hand with the Trustee as of date of confirmation in the following order of priority: (a) Debtor's Chapter 11 Trustee will be paid first; (b) Debtor's accountant will be paid second; (c) Any other professionals hired by the Debtor between the date of filing of this amendment and confirmation will be paid third; (d) Any other allowed administrative expenses will be paid fourth; and (e) To the extent that there are any funds left over after the above payments have been made, payment will be made to Debtor's attorney.*
>
> *In the event that Debtor's attorney's fees are allowed in an amount in excess of the remainder, Debtor and his counsel may agree to payment terms to be paid in a way that does not diminish the*

*payment stream for the general unsecured creditors, as set forth below.*

7.      On page 6, Debtor further amends Article 10 to add the following additional provision, ¶ 10.6:

> *Claims for unpaid administrative expenses, including claims of professionals, through the effective date of the plan, must be filed within thirty (30) days of the effective date of the plan, and, to the extent allowed, will be paid as set forth above in ¶ 3.02, stated above.*

8.      Debtor reiterates his Second Amended Plan, dated May 5, 2022, to the extent not inconsistent herewith and, in the event that this modification is different from the Second Amended Plan, the modification controls.

Respectfully submitted this 5th day of October, 2022.

*/s/ H. Edward Paris*
(Signature of the Plan Proponent)

H. Edward Paris
(Printed name)

*/s/ Fife M. Whiteside*
(Signature of the Attorney for the Plan Proponent)

Fife M. Whiteside
(Printed name)

# EXHIBIT "A"
# SECOND AMENDED PLAN

| Fill in this information to identify the case: | |
|---|---|
| Debtor name    **H. Edward Paris, DDS, P.C.** | |
| United States Bankruptcy Court for the:    MIDDLE DISTRICT OF GEORGIA | |
| Case number (if known)    **21-40150** | ☑ Check if this is an amended filing |

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

**H. Edward Paris, DDS, P.C.**'s Plan of Reorganization, Dated __May 5, 2022__

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

**Background for Cases Filed Under Subchapter V**

    **A.  Description and History of the Debtor's Business**

        The Debtor is a [corporation, partnership, etc.]. Since [insert year operations commenced], the Debtor has been in the business of __providing endodontic services (dentistry)__.

    **B.  Liquidation Analysis**

        To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit __"A"__.

    **C.  Ability to make future plan payments and operate without further reorganization**

        The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

        The Plan Proponent has provided projected financial information as Exhibit __"B"__.

        The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $ __5,095.82__.

        The final Plan payment is expected to be paid on __September 30, 2025__.

        [Summarize the numerical projections, and highlight any assumptions that are not in accord with past experience. Explain why such assumptions should now be made.] **See Exhibit "C."**

        **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **H. Edward Paris, DDS, P.C.** (the *Debtor*) from [Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for:    __1__ classes of priority claims;

                      __0__ classes of secured claims;

                      __1__ classes of non-priority unsecured claims; and

                      __1__ classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately __18__ cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01    **Class 1** _____    All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

                              [Add classes of priority claims, if applicable]

| Debtor | H. Edward Paris, DDS, P.C. | Case number *(if known)* 21-40150 |
|---|---|---|
| | Name | |

**2.02** Class 2 _____ The claim of **Not Applicable**_____, to the extent allowed as a secured claim under § 506 of the Code.

[Add other classes of secured creditor, if any. *Note:* Section 1129(a)(9)(D) of the Code provides that a secured tax claim which would otherwise meet the description of a priority tax claim under § 507(a)(8) if the Code is to be paid in the same manner and over the same period as prescribed in § 507(a)(8).]

**2.03** Class 3 _____ All non-priority unsecured claims allowed under § 502 of the Code. **Composed of two (2) claims: (1) Paragon Bank ($1,159,385.00) and (2) Truist (formerly BB&T) ($49,303.00).**

[Add other classes of unsecured claims, if any.]

**2.04** Class 4 _____ Equity interests of the Debtor. (If the Debtor is an individual, change this heading to *The interests of the individual Debtor in property of the estate.*)

---

| | Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees |
|---|---|

**3.01** Unclassified claims — Under section § 1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes.

**3.02** Administrative expense claims — Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Or

Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid [specify terms of treatment, including the form, amount, and timing of distribution, consistent with section 1191(e) of the Code].

[Note: the second provision is appropriate only in a subchapter V plan that is confirmed non-consensually under section 1191(b).]

**3.03** Priority tax claims — Each holder of a priority tax claim will be paid [Specify terms of treatment consistent with § 1129(a)(9)(C) of the Code]. **Claim of $0, paid nothing.**

**3.04** Statutory fees — All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

**3.05** Prospective quarterly fees — All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code

---

| | Article 4: Treatment of Claims and Interests Under the Plan |
|---|---|

**4.01** Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority claims excluding those in Article 3 | ☑ Impaired ☐ Unimpaired | Class 1, the priority tax claim of the IRS was filed in the amount of $35,838.30, Proof of Claim No. 1, bur was reduced to $0.00 by an amendment, filed on August 19, 2021. Based on the last amendment, nothing is due to the IRS, and it will be paid nothing but, on discharge, will be determined not to be owed anything. |
| Class 2 – Secured claim of [*Insert name of secured creditor.*] | ☑ Impaired ☐ Unimpaired | There are no secured claims as judgment creditor, Paragon Bank, failed to record a FiFa prior to the filing of the bankruptcy case. Order of confirmation is a determination that Paragon Bank is unsecured as of effective date of the plan. |
| Class 3 – Non-priority unsecured creditors | ☑ Impaired ☐ Unimpaired | General unsecured creditors, Class 3, is impaired. The class will be paid as set forth more fully below, under Article 7: Means of Implementation of Plan, ¶ 1.1. |
| Class 4 - Equity security holders of the Debtor | ☐ Impaired ☑ Unimpaired | This class is composed of the sole shareholder, Dr. H. Edward Paris, and the equity security is unimpaired. |

---

| | Article 5: Allowance and Disallowance of Claims |
|---|---|

| Debtor | H. Edward Paris, DDS, P.C. | | Case number *(if known)*  21-40150 |
|---|---|---|---|
| | Name | | |

| 5.01 | Disputed Claim | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: |
|---|---|---|
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | Delay of distribution on a disputed claim | No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order]. |
| 5.03 | Settlement of disputed claims | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | Assumed executory contracts and unexpired leases | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: |
|---|---|---|
| | | [List assumed, or if applicable assigned, executory contracts and unexpired leases.] |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. |
| | | A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **Not Applicable** days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

7.1   General Unsecured Creditors (Class 3) are composed of only two (2) creditors. This class will be paid as follows:

(a) Debtor, or the Trustee, dependent upon whether confirmation is under 11 U.S.C. § 1191(b), will pay thirty six monthly payments, starting thirty (30) days after the effective date of the plan, each in the amount of $5,000.00, which will be divided *pro rata* between Paragon Bank, with a claim of $1,159,385.00, and Truist (formerly BB&T), which holds two (2) claims, with a combined value of $49,303.00;

(b) Debtor, or the Trustee, dependent upon whether confirmation is under 11 U.S.C. § 1191(b), will pay out, in addition to the foregoing, a *pro rata* share of preference recoveries including, but not limited to, preference recoveries against Paragon Bank, as set forth in more detain in Article 10 below.

7.2   Means of implementation of the plan shall be as follows:

The Debtor will continue to operate in the ordinary course of business in order to make the payments set forth above until such time as the Debtor's sole shareholder and its one (1) practicing dentist concludes that it is no longer physically possible for him to continue to engage in endodontistry practice or thirty-six (36) months following the effective date of the plan, whichever comes earlier. However:

(a) In the event that the Debtor, based on the decision of the Debtor's sole dental practitioner and sole shareholder, concludes that it is no longer possible for the Debtor to continue to operate in the manner it is currently operating, the Debtor will sell all assets, pursuant to a sale under 11 U.S.C. § 363, and distribute the proceeds of the sale to creditors;

(b) Alternatively, at the Debtor's discretion, as guided by the decision of its sole shareholder and sole dental practitioner, may convert to Chapter 7 to allow a Chapter 7 Trustee to liquidate the Debtor's assets or dismissing to self liquidate within thirty-six (36) months prior to confirmation;

(c) The Debtor has scheduled, and is aware of, one (1) ostensible preference made to Paragon Bank in the approximate amount of $43,000.00, and a provision is made for recovery of that preference under Article 10, below.

| Debtor | H. Edward Paris, DDS, P.C. | Case number (if known) | 21-40150 |
|---|---|---|---|
| | Name | | |

**Article 8: General Provision**

| 8.01 | Definitions and rules of construction | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
|---|---|---|
| | | [Insert additional definitions if necessary]. |
| 8.02 | Effective Date | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | Binding Effect: | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | Captions | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | Controlling Effect | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of _Georgia_ govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |
| [8.07 | Corporate Governance | [If the Debtor is a corporation include provisions required by § 1123(a)(6) of the Code.] |
| [8.08 | Retention of Jurisdiction | The Court will maintain its full quantum of jurisdiction through the effective date of the plan. After the effective date of the plan, regardless of whether confirmation is under 11 U.S.C. § 1191(b) or not, the Court reserves jurisdiction for the following: |

<blockquote>
(a)    Entry of an order of discharge once plan payments have been completed, if confirmation is under 11 U.S.C. § 1191(b), and discharge was not entered on the effective date of the plan;

(b)    Post-confirmation modification(s), to the extent the plan was confirmed under 11 U.S.C. § 1191(b), and modification is available under 11 U.S.C. § 1193(b);

(c)    Approval, after notice and a hearing, of any asset sale, under 11 U.S.C. § 363, and it shall not be an objection that such a sale is conducted post-confirmation;

(d)    Resolution of any timely filed litigation in Bankruptcy Court, whether brought by the Debtor or against the Debtor, whether under Rules of Bankruptcy Proceeding, Part VII, Adversary Proceedings, or Rule of Bankruptcy Proceedings, Part IX, Rule 9014, or otherwise, including, but not limited to, (I) Objections to Claims by the Debtor or the Trustee, (II) Bankruptcy Code Avoidance Actions brought by the Debtor or the Trustee under Subchapter III, Sections 541 to 562, (III) Equitable Subordination Claims brought by the Debtor, the Trustee, or any creditor, under 11 U.S.C. Section 510;

(e)    Proceedings or matters to interpret, construe or enforce the plan, any modifications of the plan, and any orders entered by the Bankruptcy Court before or after the effective date of the plan;

(f)    Proceedings or matters to reopen this case, as a closed case, under 11 U.S.C. § 350, for any purpose, including, but not limited to, exercising jurisdiction under the foregoing;

(g)    Any proceeding or matter for which the Court would have jurisdiction after the effective date of the plan, whether mentioned above or not.
</blockquote>

| Debtor | H. Edward Paris, DDS, P.C. | Case number (*if known*) | **21-40150** |
|---|---|---|---|
| | Name | | |

**Article 9: Discharge**

[Include the appropriate provision in the Plan]

**[Discharge -- Section 1141(d)(3) IS NOT applicable; use one of the alternatives below]**

**[Discharge if the Debtor is a corporation under Subchapter V]**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i) imposed by this Plan; or

    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

    or

    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Debtor   **H. Edward Paris, DDS, P.C.** _____      Case number (*if known*) __21-40150__
         Name

**Article 10: Other Provisions**

10.1     As set forth in the Statement of Affairs, Question 3, there was one (1) identified preference to Paragon Bank. The Debtor or Trustee may assert claims against Paragon Bank, or any other recipient of any other preference which the Debtor or Trustee identifies, within ninety (90) days after the effective date of the plan, or expiration of the statute of limitations under under 11 U.S.C. § 546(a)(1)(A), whichever is earlier. In the event that the Debtor fails to assert such a claim within sixty (60) days of the effective date of the plan, the Trustee may exercise that right. Debtor or Trustee may recover in any way provided by bankruptcy law, including, but not limited to, disallowance or postponement of the claim under 11 U.S.C. § 502(d).

10.2     The Trustee and the Debtor may object to any claim, including claims of Paragon Bank that the Debtor's sole shareholder may make. Such an objection or complaint, however, must be brought within ninety (90) days of the effective date of the plan. In the event that a timely objection or complaint is brought, then distribution under Class 3, general unsecured creditors, will be suspended until the objection or complaint is resolved. No distribution will be made to any creditor in that class until the objection or complaint is resolved.

10.3     The Debtor may convert or dismiss prior to the final payment under the plan, at his decision, as set forth in ¶ 4.1, above. However, if the plan was confirmed under 11 U.S.C. § 1191(b), Debtor will not receive a discharge.

10.4     Debtor may conduct an asset sale of some or all of its assets, under 11 U.S.C. § 363, subject to notice and a hearing, at any time prior to the final payment under the plan. Net proceeds will be distributed to Class 3 claims *pro rata*.

10.5     Paragon Bank took judgment against Debtor under the Uniform Reciprocal Judgment Act, but did not record it as a FiFa. To the extent that Paragon Bank has a lien, it is deemed avoided upon the effective date of the plan.

Debtor   H. Edward Paris, DDS, P.C.                                    Case number (If known)   21-40150
      Name

[Insert other provisions, as applicable.]

Respectfully submitted,

X  /s/ H. Edward Paris _____    H. Edward Paris
   [Signature of the Plan Proponent]                  [Printed name]

X  /s/ Fife M. Whiteside _____    Fife M. Whiteside
   [Signature of the Attorney for the Plan Proponent]   [Printed name]

ASSET ANALYSIS

| Asset (6/30/2021) | Disposition Conversion (Value to client) | Chapter 7 (Value to Trustee) |
|---|---|---|
| Cash | $ 85,514.00 | $ 85,514.00 |
| Collectible Receivables | $111,840.00 | $ 11,184.00 |
| Equipment/Inventory | $ 75,000.00 | $ 7,500.00 |
| Preference Recovery (Paragon) | $      0.00 | $ 43,000.00 |
| Preference Recovery (Paris) | $      0.00 | $ 26,000.00 |
| Other Assets | $  2,000.00 | $  2,000.00 |
| Gross | $274,354.00 | $175,198.00 |
| | | |
| Less: Trustee's Fees/Commissions | | ($ 17,300.00) |
| Tax Claim (POC #1) | | ($ 35,000.00) |
| | | |
| Net Available for Distribution | | $122,898.00 |

EXHIBIT "A"

## H. Edward Paris, DDS, PC
### Cash Flow Projection
### 04-01-21 to 10-31-21

| | 04/30/21 | 05/31/21 | 06/30/21 | 07/31/21 | 08/31/21 | 09/30/21 | 10/31/21 |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| Fees | 93,770.69 | 96,749.60 | 99,217.04 | 101,720.78 | 89,479.36 | 96,584.64 | 93,644.30 |
| Less Patient refunds | 2,030.85 | 424.05 | 1,516.29 | 1,268.31 | 2,369.20 | 622.12 | 1,497.60 |
| Net fees | 91,739.84 | 96,325.55 | 97,700.75 | 100,452.47 | 87,110.16 | 95,962.52 | 92,146.70 |
| **Expenses** | | | | | | | |
| Automobile expense | 0.00 | 21.58 | 0.00 | 0.00 | 0.00 | 86.34 | 3,979.36 |
| Bank service charges | 1,755.11 | 1,239.56 | 1,385.31 | 1,202.25 | 1,328.10 | 1,853.45 | 1,565.26 |
| Dues and subscriptions | 51.83 | 58.10 | 17.02 | 17.02 | 883.02 | 190.36 | 168.75 |
| Insurance | 791.31 | 0.00 | 0.00 | 0.00 | 1,095.48 | 336.00 | 0.00 |
| Malpractice insurance | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Worker's compensation | 0.00 | 3,784.92 | 716.12 | 0.00 | 0.00 | 0.00 | 0.00 |
| Group insurance | 1,955.57 | 1,636.03 | 1,934.04 | 1,614.50 | 1,838.86 | 2,918.52 | 1,592.97 |
| Officers health insurance | 690.76 | 690.76 | 690.76 | 690.76 | 690.76 | 1,955.57 | 690.76 |
| Officers life insurance | 516.50 | 516.50 | 516.50 | 8,005.47 | 516.50 | 690.76 | 516.50 |
| Disability overhead insurance | 2,335.05 | 0.00 | 225.50 | 360.90 | 0.00 | 516.50 | 0.00 |
| Postage and delivery | 447.76 | 483.91 | 100.00 | 0.00 | 182.36 | 815.85 | 76.00 |
| Printing and reproduction | 0.00 | 281.88 | 0.00 | 0.00 | 0.00 | 554.26 | 0.00 |
| Professional fees | 1,389.52 | 1,457.56 | 1,442.25 | 1,314.82 | 1,314.04 | 1,402.99 | 1,205.97 |
| Rent | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| Repairs and maintenance | 835.76 | 2,378.45 | 1,146.00 | 3,024.35 | 1,669.44 | 1,946.43 | 1,627.64 |
| Telephone | 802.09 | 740.08 | 866.91 | 867.87 | 782.71 | 781.83 | 924.13 |
| Travel | 219.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Entertainment & meals | 9.69 | 106.00 | 0.00 | 0.00 | 181.24 | 165.99 | 0.00 |
| Interest expense | 624.10 | 982.32 | 940.28 | 994.13 | 940.81 | 1,145.72 | 1,327.14 |
| Utilities | 1,529.83 | 1,346.56 | 1,614.73 | 3,074.36 | 1,817.79 | 2,457.17 | 2,030.91 |
| Office expense | 1,062.65 | 1,710.52 | 2,003.02 | 454.17 | 521.01 | 364.76 | 1,440.76 |
| Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 894.57 | 0.00 | 0.00 |
| Salaries and wages | 21,106.60 | 22,400.14 | 21,733.67 | 21,106.08 | 21,160.66 | 21,096.60 | 22,415.14 |
| Officers salary | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| Payroll taxes | 1,614.65 | 1,713.61 | 1,662.63 | 1,614.62 | 1,618.79 | 1,613.89 | 1,714.76 |
| Other taxes and license | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 275.94 | 0.00 |
| Uniforms | 63.60 | 60.26 | 149.05 | 83.10 | 32.75 | 34.25 | 31.30 |
| Dental supplies | 7,718.37 | 7,254.16 | 11,769.08 | 8,090.46 | 9,593.34 | 8,073.65 | 8,343.91 |
| Total expenses | 63,869.77 | 67,212.90 | 67,277.87 | 70,864.86 | 65,412.23 | 67,615.81 | 68,001.26 |
| **Net cash flow** | 27,870.07 | 29,112.65 | 30,422.88 | 29,587.61 | 21,697.93 | 28,346.71 | 24,145.44 |

EXHIBIT "B"

Debtor is a subchapter S corporation, with all net profits paid to the Debtor's sole shareholder, Dr. H. Edward Paris, DDS. Debtor's accountant prepared a cash flow projection, Exhibit "B," showing an average cash flow of $27,312.00. However, the economics of the Debtor's practice have shifted, and his cash flow since the beginning of the case has proved to be much lower. Debtor's CPA is on an extended vacation and is not available to prepare a revision to Exhibit "A" until mid-July, at the earliest. Debtor's counsel has prepared an average of actual cash flow since the beginning of the case, and it is calculated as follows, from "Net Cash Flow," line 22, on the monthly reports filed through March 2022:

| | |
|---|---|
| April 2021 | $17,953.37 |
| May 2021 | 87,176.11 |
| June 2021 | (58,305.23) |
| July 2021 | 19,804.54 |
| August 2021 | 6,712.56 |
| September 2021 | (8,926.13) |
| October 2021 | 213.55 |
| November 2021 | (26,067.07) |
| December 2021 | ( 8,618.14) |
| January 2022 | 3,308.07 |
| February 2022 | 27,899.68 |
| March 2022 | (_____1.42) |
| Total of 12 Months | $61,149.89 ÷ 12 = $5,095.82 |

The average net cash flow has been $5,095.82, and it is projected to be that for purposes of confirmation. A more formal cash flow, prepared by Debtor's CPA, will be prepared and made available to creditors when she has returned.

However, Dr. Paris was subject to an alimony obligation to pay out in the amount of $12,500.00/mth., which will expire in May 2022, which accounts for the reduction in plan payments in the early part of the plan. Debtor treated this as priority since, if he does not pay the alimony as provided, he is subject to citation for contempt, which would mean incarceration preventing him from conducting his practice and eliminating all income. That cost will disappear at the end of May, 2022, and will impact personal net disposable income.

Additionally, Debtor has suffered loss of his entire life savings in a failed business investment in the state of Washington. He is 66 years old (as of July 8, 2021), and actual or potential health issues will not likely prevent him from continuing practicing more than the next three (3) years. Debtor's disposable income must be reduced by his accumulating at least a nominal amount for retirement, and so this makes an ordinary and reasonable expense for the Debtor.

The Debtor pays to Dr. Paris a salary, but this salary is devoted to making a provision for current income taxes. Debtor's income comes out of his subchapter S net income, which is effectively the amount shown on Exhibit "B." Again, this is subject to change over time depending on Dr. Paris's health as he ages, and also depending on the economics of his practice.

**EXHIBIT "C"**

# EXHIBIT "B" REVISED PROJECTIONS

**Note: Revised budget includes changes suggested by objecting creditor and addition of expenses that objection creditor chose to disregard. Net disposable income is $4,962.00/mth. This assumes compensation for Dr. Paris calculated at forth percent (40%) of collections. The amount of compensation may increase based on other testimony. Debtor does not intend to reduce the plan payments, but may if another plan is filed.**

**H Edward Paris, DDS, PC**
**40% of Revenue Reasonable Compensation Calculations With Reduction in G Techau Salary**
**Per percentage sited in Whitridge Email dated 09-23-22**

| Account | Description | Revenue & Financial Statement Dated 07-31-22 | Reduction in Techau Salary Payroll Taxes & Attorney Fees * | Items of Practice Expense paid with G Techau American Express | Revenue After Total Expenses 07-31-22 | Monthly Budget based on actual YTD 7/31/2022 |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| 4010 | Fees | $624,241.35 | $0.00 | 0.00 | $624,241.35 | $89,177.34 |
| 4050 | Patient refunds | -10,575.78 | 0.00 | 0.00 | -10,575.78 | -1,510.83 |
| **Total revenue collected** | | 613,665.57 | 0.00 | 0.00 | $613,665.57 | 87,666.51 |
| | | | | | | |
| **Operating Expenses** | | | | | | |
| 6010 | Advertising | 464.45 | 0.00 | 0.00 | $464.45 | 66.35 |
| 6120 | Bank service charges | 12,576.50 | 0.00 | 0.00 | $12,576.50 | 1,796.64 |
| 6125 | Continuing education | 0.00 | 0.00 | 1,119.00 | $1,119.00 | 159.86 |
| 6140 | Contributions | 225.00 | 0.00 | 0.00 | $225.00 | 32.14 |
| 6160 | Dues and subscriptions | 1,767.00 | 0.00 | 0.00 | $1,767.00 | 252.43 |
| 6180 | Insurance | 12,663.43 | 0.00 | 0.00 | $12,663.43 | 1,809.06 |
| 6185 | Malpractice insurance | 2,403.00 | 0.00 | 0.00 | $2,403.00 | 343.29 |
| 6187 | Group insurance | 12,430.80 | 0.00 | 7,458.48 | $19,889.28 | 2,841.33 |
| 6188 | Officers health insurance | 4,630.50 | 0.00 | 0.00 | $4,630.50 | 661.50 |
| 6191 | Disability overhead insurance | 6,042.28 | 0.00 | 0.00 | $6,042.28 | 863.18 |
| 6270 | Professional fees | 10,931.15 | 0.00 | 0.00 | $10,931.15 | 1,561.59 |
| 6280 | Legal fees | 22,298.59 | -15,298.59 | 0.00 | $7,000.00 | 1,000.00 |
| 6290 | Rent | 49,000.00 | 0.00 | 0.00 | $49,000.00 | 7,000.00 |
| 6300 | Repairs and maintenance | 6,461.30 | 0.00 | 0.00 | $6,461.30 | 923.04 |
| 6340 | Telephone | 4,900.64 | 0.00 | 955.41 | $5,856.05 | 836.58 |
| 6350 | Travel | 0.00 | 0.00 | 4,064.92 | $4,064.92 | 580.70 |
| 6360 | Entertainment & meals | 1,695.44 | 0.00 | 0.00 | $1,695.44 | 242.21 |
| 6390 | Utilities - water | 1,330.41 | 0.00 | 0.00 | $1,330.41 | 190.06 |
| 6390 | Utilities - power | 6,994.11 | 0.00 | 0.00 | $6,994.11 | 999.16 |
| 6390 | Utilities - waste | 3,200.86 | 0.00 | 0.00 | $3,200.86 | 457.27 |
| 6550 | Office expense | 9,414.09 | 0.00 | 804.57 | $10,218.66 | 1,459.81 |
| 6556 | Supplies | 684.46 | 0.00 | 511.06 | $1,195.52 | 170.79 |
| 6560 | Salaries and wages | 121,588.15 | -25,400.00 | 0.00 | $96,188.15 | 13,741.16 |
| 6615 | Payroll taxes | 18,300.97 | -1,944.00 | 0.00 | $16,356.97 | 2,336.71 |
| 6820 | Other taxes and license | 475.00 | 0.00 | 0.00 | $475.00 | 67.86 |
| 6850 | Uniforms | 1,373.25 | 0.00 | 0.00 | $1,373.25 | 196.18 |
| 6900 | Dental supplies | 33,221.06 | 0.00 | 16,123.45 | $49,344.51 | 7,049.22 |
| **Total operating expenses** | | 345,072.44 | -42,642.59 | 31,036.89 | 333,466.74 | 47,638.11 |
| | | | | | | |
| **Shareholder compensation** | | $268,593.13 | $42,642.59 | -$31,036.89 | $280,198.83 | $40,028.40 |

* Techau Salary Reduction - based on the fact that there are 30 weeks between 01-01-22 and 07-31-22
* On going legal fees of $1,000 per month

**H Edward Paris, DDS, PC**

**40% of Revenue Reasonable Compensation Calculations With Reduction in G Techau Salary**

**Per percentage sited in Whitridge Email dated 09-23-22**

|  | Seven Months Ending 7/31/2022 |  |
|---|---|---|
| **Reasonable Compensation Calculation** |  |  |
| Net collections YTD | 613656 |  |
| Reasonable compensation (40% of Net Collections) | A | 245462 A |
| Total of Actual Compensation Items | B | 280199 B |
| Difference between reasonable compensation and Compensation items (B-A) | | 34736 |
| Average Disposable income of PC per month | | 4962 |

# EXHIBIT "C" REVISED NUMERICAL PROJECTIONS

Debtor is a subchapter S corporation, with all net profits paid to the Debtor's sole shareholder, Dr. H. Edward Paris, DDS. Debtor's accountant prepared a cash flow projection, Exhibit "B," showing an average cash flow of $27,312.00. However, the economies of the Debtor's practive have shifted, and his cash flow since the beginning of the case has proved to be much lower. Debtor's CPA was on an extended vacation and was not available to prepare a revision to Exhibit "A" until mid-July, at the earliest.[1] Debtor's counsel has prepared an average of actual cash flow since the beginning of the case, and it is calculated as follows, from "Net Cash Flow," line 22, on the monthly reports filed through March 2022:

| | |
|---|---|
| April 2021 | $17,953.37 |
| May 2021 | 87,176.11 |
| June 2021 | ( 58,305.23) |
| July 2021 | 19,804.54 |
| August 2021 | 6,712.56 |
| September 2021 | ( 8,926.13) |
| October 2021 | 213.55 |
| November 2021 | ( 26,067.07) |
| December 2021 | ( 8,618.14) |
| January 2022 | 3,308.07 |
| February 2022 | 27,899.68 |
| March 2022 | ( 1.42) |
| Total of 12 Months | $61.149.89 ÷ 12 = $5,095.82 |

The average net cash flow has been $5,095.82, and it is projected to be that for purposes of confirmation. A more formal cash flow, prepared by Debtor's CPA, will be prepared and made available at time of trial.[2]

However, Dr. Paris was subject to an alimony obligation to pay out in the amount of $12,500.00/mth., which expired in May 2022, which accounted for the reduction in plan payments in the early part of the plan. Debtor treated this as priority since, if he had not paid the alimony as provided, he was subject to citation for contempt, which would mean incarceration preventing him from conducting his practice and eliminating all income.[3]

Additionally, Dr. Paris[4] has suffered the loss of his entire life savings in a failed business investment in the state of Washington. He is 66 years old (as of July 8, 2021), and actual or potential

---

[1] Debtor's CPA has returned, but the cash flow from the second amendment is retained. Updates will be provided at trial.

[2] See Fn. 1, above.

[3] Alimony has expired in the second amendment to the plan.

[4] In the original, although in other places in Exhibit "C" "Dr. Paris" had been used to distinguish from Debtor, the word "Debtor" was used here. Paragon argues this is a defect in the plan, although it is obvious that "Dr. Paris" was intended from the reference to Dr. Paris's gender and age.

health issues will not likely prevent him from continuing practicing more than the next three (3) years.  Debtor's disposable income must be reduced by his accumulating at least a nominal amount for retirement, and so this makes an ordinary and  reasonable expense for the Debtor.

      The Debtor pays to Dr. Paris a salary, but this salary is devoted to making a provision for current income taxes.  Debtor's income comes out of his subchapter S net income, which is effectively the amount shown on Exhibit "B."  Again, this is subject to change over time depending on Dr. Paris's health as he ages and, also, depending on the economics of his practice.